600 KILBRETH v. ROOTS.

# CHARLESTON.

## KILBRETH *v.* ROOT'S ADM'R.

*(ENGLISH, JUDGE, Absent.)

Submitted January 22, 1890.—Decided March 20, 1890.

1. ADMINISTRATION—DECREE OF SALE.
   In general the personal assets of a decedent, so far as they have not been administered, should be administered under the direction of the court, and applied to the payment of the debts of the decedent in relief of the realty descended to the heir, or devised to the devisee, in a suit or proceeding to subject the realty to the payment of decedent's debts ; hence the court should not decree the sale of the realty of a decedent to pay a judgment-lien before the accounts of the administrator have been settled, and the unadministered assets, if any, ascertained.

2. ADMINISTRATION—DECREE OF SALE—DOWER.
   When the widow is a defendant in the suit, and has not elected to take the value of her dower in money, her dower should be assigned, before an out and out sale of the realty is decreed.

3. ADMINISTRATION—DECREE OF SALE—PARTIES.
   Where the bill alleges that there are devisees, and proceeds against them as "unknown devisees," under section 11 chapter 124 of the Code, although the domicile of the deceased was well known, and the names of the devisees easily ascertainable from

—————
*Counsel below.

the will, the court should require such devisees to be made
parties by name before selling the realty in which they have an
interest.

4. ADMINISTRATION—DECREE OF SALE—PARTNERS AND PARTNER-
SHIP.

As the devisees or heirs are entitled to have the distributive
share of the deceased partner in the assets of the firm applied to
the relief of the land ; and as the responsibility of the surviving
partner to these representatives of the deceased exists only after
the partnership affairs are settled, and the right of participation
is only in the *balance* after payment of all social debts ; there-
fore, there should be an account and an audit of the debts and
credits of the firm, and a settlement of the partnership accounts
*inter sese,* before a decree to sell the land of the deceased part-
ner.

5. ADMINISTRATION—ANSWER—CROSS-BILL.

If the defendant file an answer which seeks no discovery, and
makes no defence not equally available by way of answer under
the former practice, such an answer can not be regarded as a
cross-bill filed under section 35, chapter 125 of the Code, and no
special replication should be required or permitted to such an-
swer.

*Knight & Couch* for appellant.

*Gunn & Gibbons* for appellee.

LUCAS, JUDGE :

This was a suit instituted by bill in chancery in the Circuit
Court of Mason County, by James P. Kilbreth, who sues as
sole surviving partner of the firm Roots & Kilbreth, which
was dissolved by the death of the other partner, G. Y
Roots, deceased. The bill is against the personal repre-
sentative of G. Y. Roots, and against his widow and
"unknown heirs *and devisees,*" his surviving partners in the
firm of Roots & Co., which it seems consisted of A. E.
Smith, H. P. Pifer, and G. Y. Roots. It appears from the
record that the firm of Roots & Kilbreth, composed as above
stated of James P. Kilbreth and G. Y. Roots, on the 18th
of May, 1888, obtained a final decree against the firm of
Roots & Co., in the said Circuit Court for the sum of
$2,773.04, with interest from that date, and costs of suit.
The plaintiff in the present suit sues as *surviving partner,*
authorized as such to settle the partnership accounts and

collect the outstanding assets. In his bill, he names two creditors, who he alleges have a lien on the said decree for their services as attorneys in obtaining the same, and informally makes them parties, and they subsequently appeared, and demurred to the bill, but their demurrer was overruled. Why they should have demurred to a bill which was in part at least, for their benefit, it is difficult to understand.

The main object of the bill was to enforce the lien of the decree aforesaid against the real estate of the deceased partner, G. Y. Roots, which consisted of a farm lying in said county, which he owned as individual property, at the time of his death. The administrator of G. Y. Roots answered the bill, and admitted the decree and the constitution of the two firms as aforesaid, but averred that the firm of Roots & Kilbreth, composed of plaintiff and administrator's decedent, was really insolvent, and the said G. Y. Roots paid off a large portion of its indebtedness out of his own personal estate, and the said firm thus became indebted to the decedent's estate to a much larger amount than the decree in favor of said firm of Roots & Kilbreth sought to be enforced in plaintiff's bill. The answer also denies the debts alleged as due the attorneys as above mentioned, or that they have any lien on the said decree. The answer concludes as follows:

Respondent is informed and believes, and so charges the fact to be, that the plaintiff and the said G. Y. Roots, were equal partners in the said firm of Roots & Kilbreth, and were equally liable for the debts of said firm; that said G. Y. Roots was a member of the firm of said Roots & Co., and was entitled to a seven tenths interest in said firm, and liable for a seven tenths part of the indebtedness of said firm; that there never has been any settlement of the partnership dealings, transactions and accounts of the said firm of Roots & Kilbreth between the said Roots and the said Kilbreth, and respondent prays that such a settlement may now be had in this suit, and to the extent that said firm of Roots & Kilbreth is found indebted to the estate of said Roots, the estate of the said Roots may be relieved from the payment of the claim set up in the plaintiff's bill. The respondent

denies every allegation in the plaintiff's bill contained not herein admitted to be true by implication or otherwise and calls for strict proof thereof.

To this answer, there was a general replication.

The cause came on to be heard on the 16th of September, 1889, and the decree recites that a rule had been awarded against the said attorneys named as creditors in the bill, to answer the same, and they declined to answer. The decree then ascertains the said debt to amount, principal and interest, to $2,994.00, and that the costs thereto incident amount to $334.45, and adjudges that said debt and costs are a valid and binding lien on the real estate in the bill and proceedings mentioned—and then proceeds as follows : And it also from said paper further appearing to the court that said lien of said decree and its costs are the first and only lien upon said real estate, it is therefore adjudged, ordered and decreed that in default of the said Roots & Co. or some one for them, or in default of the personal representative or heirs at law of said G. Y. Roots, deceased, or his devisees, to pay off and discharge said decree with its interest now amounting to said sum $2,994.100 and the said costs of $334.45-100 within thirty days from the rising of this court, together with the costs incurred by the plaintiff in this suit, then the said land in the bill and proceedings mentioned or so much thereof as may be necessary shall be sold to pay off and discharge the same *etc.*, with proper provision for appointing a special commissioner of sale, with terms and advertisement, and bond in the usual manner. The special commissioner is directed to report to a future term, and as to the respective rights and interests of the defendants, the said attorneys, appearing in said bill, the court reserved its decision until the coming in of the proceeds of the sale decreed to be made, and the commissioner was instructed to retain the proceeds arising from said sale subject to the further order of court.

From this decree, the administrator of G. Y. Roots has taken an appeal to this Court.

The error relied upon in the petition as above stated by the appellant is that : "It is respectfully submitted that the Circuit Court erred and did a great injustice to the estate of

G. Y. Roots in refusing to settle these partnership accounts and ascertain how the partnership stood with the estate of G. Y. Roots before decreeing a sale of the real estate to satisfy a partnership claim in which the estate was interested."

It is further claimed in the petition that the prayer of the answer is for affirmative relief, such as the court would grant upon a cross-bill, under chapter 125, sections 35 and 36 of the Code, and that without a *special replication*, the affirmative allegations were admitted to be true, in accordance with the provisions of section 36 of said chapter.

Before proceeding to consider the errors specifically assigned, I will direct attention to the character and object of this bill. It is a bill to subject the real estate of a decedent to the payment of a debt. We have a statutory provision on this subject, which is as follows: (See Code 1887, chapter 86, page 669.)

§ 7. "When the personal estate of a decedent is insufficient for the payment of his debts, his executor or administrator may commence and prosecute a suit in equity to subject his real estate to the payment thereof as provided in this chapter. The widow, heirs and devisees, if any, and all the known creditors of the decedent, shall be made defendants in such suit. If such suit be not brought within six months after the qualification of such executor or administrator, any creditor of such decedent, whether he has obtained a judgment at law for his client or not, may institute and prosecute such suit on behalf of himself and the other creditors of such decedent, in which the personal representative, widow, heirs and devisees, if any, of the decedent shall be made defendants. In every suit under this section any one claiming to be a creditor of the decedent, whether he may have been made a party therein or not, or whether he may have been served with process therein or not, may present his claim, and upon such presentation, shall be deemed to have been made a party to the suit and to have been served with process therein. And evidence respecting such claim may be taken and the same may be allowed and paid, in whole or in part, or rejected in the same manner and with the same effect, as if such claimant had been originally made a party and served with process."

8. "No decree for the distribution of the proceeds of the real estate of such deceased person among his creditors, shall be made until a notice to such creditors to present and prove their claims, shall have been published and posted as hereafter provided."

As it is apparent that no money derived from the sale of the real estate in the bill mentioned could be distributed among creditors until publication of the notice required by section 8, and since the bill does itself make two creditors parties or *quasi* parties, as defendants, it is suggested that it ought to be amended, and made to conform to the statute above quoted. See *Laidley* v. *Kline's Adm'r*, 23 W. Va. 565.

But there is a much more serious error than one of form, apparent on the bill, and decree appealed from. In general, the personal assets of a decedent, so far as they have not been administered, should be administered under the direction of the court, and applied to the payment of the debts of the deceased in relief of the realty descended to the heir, or devised to the devisee, in a suit or proceeding to subject the realty to the payment of the debts of the decedent; hence the court should not decree the sale of realty of a decedent to pay a judgment-lien before the accounts of the administrator have been settled, and the unadministered assets, if any, ascertained.

Another error equally manifest in the proceedings, and decree, is that the widow of the debtor, though made a party, has not elected to take the value of her dower in the realty in money, nevertheless her dower has not been assigned, and a sale has been ordered of the realty without any reference whatever to her right of dower. See *Laid. ley* v. *Cline, adm'x.* 8 W. Va. 218.

Again, the bill avers by implication, at least, that the intestate left a will, and "devisees," and the plaintiff only makes these parties by describing them as "unknown devisees."

Now when the decedent is known to have left a will, probated at his domicile, whereby his devisees could be readily ascertained, it is error to proceed against them as "unknown devisees." *Id certum est, quod certum reddi potest*—and these devisees should have been ascertained, and made parties by name. Section 11 of chapter 124 is not intended to cover a case of intentional or negligent ignorance.

I come now to consider the error assigned in the petition—that before subjecting the realty, there ought to have been a settlement of the partnership accounts between the partners *inter sese*.

This would seem to follow necessarily from what has been said above in regard to the necessity of taking an account of the personal assets, before subjecting the realty. If, as claimed in the answer of the administrator, there is a considerable amount due the estate of G. Y. Roots from the firm of Roots & Kilbreth, this constitutes personal assets with which to relieve the land, and there should be an account. The surviving partner is regarded in a court of equity as a trustee for creditors, and as the creditors of the deceased partner have to be convened by notice before the proceeds of his realty can be distributed, it would seem proper to settle the partnership accounts at the same time, and the prayer for general relief is broad enough to embrace these necessary settlements, without resorting to any cross-bill. Neither is it necessary to appoint a receiver, so long as there is no reason to apprehend that the surviving partner, who is entitled to collect the assets, is not neglecting or abusing his trust. In short, as the devisees or heirs are entitled to have the distributive share of the deceased partner in the assets of the firm applied to the relief of the land before the land can be sold; and as the responsibility of the survivor to these representatives of the deceased, exists only after the partnership affairs are settled, and the right of participation is only in the *balance* after payment of all social debts; it is quite clear that before the land can be sold, all these necessary accounts should be taken.

As to whether the answer of the administrator should be considered in the light of a statutory cross-bill, filed under sections 35 and 36 of chapter 125 of the Code, I do not think it can be so considered, since the cross-relief sought is only incidental to the main relief prayed for in the bill, and covered also by the general prayer. Hence the allegations of the answer do not require any special replication, and must be proved under the issue raised by the general replication. A cross-bill which seeks no discovery, and makes no defence not equally available by way of answer, would be dismissed

as improperly filed.  Story's Eq. Pl. (8th Edition), § 389. *Chalfant* v. *Martin*, 25 W. Va. 394–396.   *Enoch* v. *M. & P. Co.*, 23 Id. 314.

The decree complained of must be reversed, and the cause remanded to the said Circuit Court, to be there proceeded in according to the princples adjudged in this opinion, and further according to the rules and principles governing courts of equity.

REVERSED.   REMANDED.